IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MOOS, | No. C 06-03791 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION TO DISMISS** |
| v. | |
| CROWLEY LINER SERVICES, INC., | |
| Defendant. | |

Pursuant to Civil Local Rule 7-1(b), the Court determines that defendant's motion to dismiss is appropriate for resolution without oral argument, and accordingly the August 11, 2006 hearing is VACATED. For the reasons set forth below, the Court GRANTS defendant's motion.

**BACKGROUND**

Plaintiff James Moos filed this action to challenge his termination by his employer, defendant Crowley Liner Services, Inc. ("Crowley").[1] Crowley operates maritime vessels owned by the United States. Complaint at ¶¶ 4, 8. From December 2003 to March 2004, Crowley employed Moos as the Chief Mate on one of the vessels it operated, the S.S. Cape Inscription. *Id.* at ¶¶ 1, 8, 13. On March 30, 2004, plaintiff left the S.S. Cape Inscription, and went ashore to the Port of Fujairah in the United Arab Emirates, to make a phone call to his wife. *Id.* at ¶¶ 11 - 12. The phone service at the dock could not complete the connection, so plaintiff left the port and went into Fujairah to complete the call. *Id.* at ¶ 12.

---

[1] The Court has taken the following facts from the complaint.

1 The next day, March 31, 2004, Crowley terminated plaintiff from his position as Chief Mate on the
2 ground that leaving the port was against the "Liberty Guidelines for the Port of Fujairah . . . ." *Id.* at ¶
3 13. Plaintiff alleges that leaving the port was not against the guidelines, and that he was fired without
4 cause. *Id.* at ¶¶ 14-15, 20.

5 Plaintiff filed suit against Crowley in the Superior Court of California, County of Alameda, on
6 March 30, 2006, alleging wrongful termination in violation of public policy, and wrongful termination
7 in violation of the covenant of good faith and fair dealing. Defendant removed the case to this Court
8 on June 16, 2006. Defendant filed a motion to dismiss, and plaintiff has not filed any opposition papers
9 to date. Pursuant to Civil Local Rule 7-3, plaintiff was required to file an opposition by July 21, 2006.

## DISCUSSION

12 Defendant contends that it was an agent of the United States during the time period covered by
13 the complaint, and that accordingly plaintiff's claims are barred by the Suits in Admiralty Act ("SIA"),
14 46 U.S.C. § 745. The Court agrees. "Through the Suits in Admiralty Act of 1920 . . . the United States
15 has broadly waived its sovereign immunity and consented to be sued" in admiralty cases where a United
16 States vessel is owned or operated by an agent of the United States." *Dearborn v. Mar Ship Operations,*
17 *Inc.*, 113 F.3d 995, 996 (9th Cir. 1997). "In waiving its sovereign immunity through these acts,
18 however, the government has rendered the remedies allowed by the waiver exclusive." *Id.* Thus,
19 "where a remedy lies against the United States, a suit against an agent of the United States by reason
20 of the same subject matter is precluded." *Id.* (internal quotations omitted).

21 In *Dearborn*, the Ninth Circuit analyzed whether a seaman could sue a contractor regarding an
22 injury that occurred while he was employed on a vessel owned by the United States but chartered to the
23 defendant company. "[I]f we conclude that Bay Ship was the government's agent, it necessarily follows
24 that Dearborn's suit against Bay Ship was precluded by § 745 [of the SIA]." *Id.* at 997. The court
25 examined two factors to determine whether the defendant was an agent: (1) whether the United States
26 exercised significant control over the charterer's activities – either day to day control or overall control
27 and direction of the mission, and (2) whether the charterer was engaged in the business of the United
28 States. *Id.* at 997-98. In admiralty suits, even when the "day to day working of [a] ship is not subject

2

to government control . . . an independent contractor . . . may be an agent in that he is employed as a fiduciary, acting for the principal with the principal's consent and subject to the principal's overall control and direction in accomplishing some matter undertaken on the principal's behalf." *Id.* at 998 n.3 (citation omitted). The court analyzed the agreement governing the relationship between the contractor and the United States, and concluded that the defendant was an agent because "[a] number of provisions in the agreement indicate that Bay Ship consented to operate the KANE on the government's behalf and subject to its overall control." *Id.* at 998.

Here, both the allegations of the complaint and the contract between Crowley and the United States establish that Crowley is an agent of the United States for purposes of the SIA. The complaint alleges that "defendant Crowley had been awarded a contract to operate the S.S. Cape Inscription in support of U.S. military operations in Southwest Asia by the United States Maritime Administration," Complaint ¶ 9, and that at the time of plaintiff's termination, "the S.S. Cape Inscription had gone on full operational status and had sailed to the Port of Fujairah in the United Arab Emirates . . . the ship was under the direct operational control of U.S. Naval Forces, Central Command, which had in place operational orders and Force Protection Procedures that affected the actions of civilian maritime personnel who went ashore." *Id.* ¶ 11.

Defendant has also submitted Crowley's contract with the United States. *See* Strassburg Decl. Ex. A. Under "Description/Specifications/Work Statement," the agreement states:

> **C-1.1.1 Mission** The Ready Reserve Force (RRF) is the high readiness subset of the Maritime Administration (MARAD) National Defense Reserve Fleet (NDRF) established to support the rapid deployment of U.S. military forces. A key element of strategic sealift, the RRF is specifically structured to transport military unit equipment during initial surge for forces deploying anywhere in the world.
>
> . . . .
>
> **C-1.3 MANAGEMENT OF RRF SHIPS**
> MARAD contracts with U.S. commercial ship operators for the maintenance and operation of RRF vessels.
>
> **C-1.4 RESPONSIBILITIES OF SHIP MANAGERS**
> The overall responsibility of Ship Managers is to maintain their assigned RRF ships in Fully Mission Capable Readiness Status and to efficiently operate these vessels in support of national defense objectives. . . .

*Id.* at 17.

3

Another provision, titled "Third Party Actions in Admiralty (Excluding Discrimination Claims," provides:

> Except as provided in paragraph G.13.3 DISCRIMINATION CLAIMS, the Ship Manager [Crowley] is considered to be an agent of the United States with[in] the meaning of the SIA for third party actions in admiralty arising out of the performance of this contract, including, but not limited to, all claims cognizable under the SIA . . . or the Clarification Act.

*Id.* at 73. Plaintiff does not allege that he was discriminated against on the basis of any protected characteristic, and thus the complaint does not allege any "discrimination claims" as described in the contract.[2]

The Court concludes that under the express allegations of the complaint, as well as the provisions of the contract between Crowley and the United States, Crowley was an "agent" of the United States during the time period covered by the complaint. Accordingly, plaintiff's claims against Crowley are barred. *See Dearborn*, 113 F.3d at 998-99.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss. (Docket No. 3). Because plaintiff did not file an opposition brief, the Court does not know whether he seeks leave to amend to assert a claim against the United States, or whether any such action would be timely. In an abundance of caution, however, **plaintiff is granted leave to amend on or before August 25, 2006.** If no amended complaint is filed by that date, this dismissal will become final and judgment will be entered.

**IT IS SO ORDERED.**

Dated: August 7, 2006

SUSAN ILLSTON
United States District Judge

---

[2] The contract provides, "Discrimination claims include, but are not limited to, those claims arising under Title VII of the Civil Rights Act, as amended (42 U.S.C. section 2000e *et seq.*), the Age Discrimination in Employment Act, as amended (29 U.S.C. sections 621 *et seq.*), and the Americans with Disabilities Act, as amended (42 U.S.C. sections 12117 *et seq.*)." Strassburg Decl., Ex. A at 73.

4